# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone 12 Pro<br>Evidence Custody Document Number: 0204-23 | Case No.  '23 MJ2575 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1801 | Video Voyeurism |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Clara Lenene Williams*
Applicant's signature

Clara Lenene Williams, NCIS Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone  *(specify reliable electronic means)*.

Date: July 19, 2023

Judge's signature

City and state: San Diego, California    Hon. Michael S. Berg, United States Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Lenene Williams, being duly sworn, hereby state as follows:

# INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Black iPhone 12 Pro
>Evidence Custody Document Number: 0204-23
>("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 18, United States Code Section 1801, video voyeurism as further described in Attachment B. The requested warrant relates to the of Kyle Hill (HILL) for knowingly and intentionally obtaining images of a private area of an individual without their consent in the special maritime and territorial jurisdiction onboard the USS Lenah Sutcliffe Higbee (DDG 123[1]). The **Target Device** is currently in the custody of the Naval Criminal Investigative Service at 3405 Welles Street, Ste 1, San Diego, California 92136.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

---

[1] A "DDG" is a Navy Destroyer. This ship's home port is in San Diego, CA, but was underway at the time of the alleged video recording.

1

# TRAINING AND EXPERIENCE

3. I am a Special Agent (SA) with the Naval Criminal Investigative Service (NCIS). I have been employed with NCIS since 2023 and am assigned to the General Crimes Squad at NCIS Resident Agency (NCISRA) San Diego, California. I regularly investigate felony crimes having a Department of the Navy nexus, to include, but not limited to, death investigations, adult and child sexual assaults, domestic and aggravated assaults, and child abuse and child exploitation and child pornography investigations. I am a member of the Major Case Response Team (MCRT) and have participated in search warrants and command authorizations for search and seizures as part of felony level criminal investigations.

4. Prior to my employment as a SA with NCIS, I was a SA with United States Department of State, Diplomatic Security Service (DSS), from 2019 to 2023. I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC). I also graduated from the DSS Basic Special Agent Training Course as well as the Advance Tactics and Leadership Skills Course at the Foreign Affairs Training Center (FASTC). I received training in various topics, including but not limited to: constitutional and criminal law, operational activities, physical tactics, behavioral sciences, use of force, and ethics and core values. Prior to graduating from FLETC, I received a master's degree in Criminal Justice from Arizona State University. Additionally, I have participated in the performance of my duties in the successful seizure of both physical and electronic/digital evidence.

5. As a federal agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation of

this affidavit, I have discussed the facts of this case with other law enforcement agents and SAs within NCIS.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in sexual assault investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in video voyeurism cases may yield evidence:

a. tending to show efforts to create/record non-consensual video and/or audio recordings and images;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate efforts to possess or record non-consensual video and/or audio recordings and images;

c. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

d. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

7. On July 8, 2023, an active-duty male Sailor (hereinafter "Victim") reported to Chief Master-at-Arms (MAC), that, as he was exiting the shower stall

3

in the male bathroom when he noticed the shower curtain of the shower stall across from him was approximately a quarter of the way open. While drying off his nude body, Victim noticed movement from the shower curtain and observed a phone resembling an iPhone with three distinct camera lenses protruding from the shower curtain. After approximately 5-10 seconds, Victim observed the iPhone move and was concealed by the shower curtain. Victim then noticed a distinct green Rainleaf towel hanging outside of the same shower stall where he observed the cell phone protrude and conceal.

8. Approximately seven minutes later, Victim noticed a male, approximately 74 inches tall, with a tattoo on right shin, with the same distinct green Rainleaf towel, exit the shower area and walk to a rack (sleeping quarters).

9. Victim reported what he saw to his superior as well as the description of the individual. Victim then pointed out the same individual to his superior when he saw him during chow (while eating). Victim did not know HILL. Victim's superior then relayed the information, including the identity of the individual Victim pointed out to the MAC. With that information, MAC was able to identify HILL as the individual with the green Rainleaf towel.

10. On July 8, 2023, MAC approached HILL and asked him if he would consent to MAC seizing his phone. HILL consented and provided the **Target Device** to MAC. The **Target Device** was in HILL's front pocket when he provided it to MAC. HILL was not interviewed or asked any questions about the allegation.

11. On July 9, 2023, HILL was removed from DDG123. The **Target Device** was maintained on the ship in a MAC's custody. The ship returned to San Diego, CA on July 12, 2023, and the **Target Device** was provided to NCIS.

12. On July 13, 2023, NCIS interviewed Victim. Victim stated DDG123 had been underway for approximately five days when it returned to San Diego, California.

13. HILL went underway with DDG 123 on July 8, 2023. HILL is a civilian contractor that works for Naval Service Warfare Center Philadelphia. HILL was underway with the ship to observe the main propulsion. HILL arrived in the San Diego area on July 7, 2023.

14. Based on the facts of this investigation and my training and experience, I believe there may be relevant evidence located within the **Target Device**, specifically electronic media, to include audio, video, and photographs of Victim and others residing and showering on the ship. The basis for believing there are other video recordings is that the bathroom on the ship is shared by many. It is likely, given the nature of quarters, that others were present in the bathroom and it is possible, if not probable, that more than one individual was video-recorded by HILL. Accordingly, there is probable cause to believe that evidence to support Victim's allegation that HILL captured an image of a private area of an individual without their consent, and knowingly did so under circumstances in which there is a reasonable expectation of privacy in violation of 18 U.S.C. §1801 will be found on the **Target Device**. Accordingly, I request permission to search **Target Device** for videos, audio recordings, and images beginning on July 1, 2023, up to and including July 8, 2023.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to

access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN DATA**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

19. Based on the aforementioned information, I respectfully submit that there is probable cause to believe that a search of the **Target Device** will yield e evidence of HILL's violations of Title 18, United States Code, Section 1801. Accordingly, I respectfully request that the Court issue a warrant authorizing the search of the items listed in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Clara Lenene Williams*
Clara Lenene Williams, Special Agent
Naval Criminal Investigative Service

Attested to by the Applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 19th day of July, 2023.

_____
HONORABLE MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE

7

# ATTACHMENT A
## ITEMS TO BE SEARCHED

The following property is to be searched:

>Black iPhone 12 Pro
>Evidence Custody Document Number: 0204-23
>("**Target Device**")

**Target Device** is currently in the Naval Criminal Investigative Service's possession at 3405 Welles Street, Ste 1, San Diego, California 92136.

1

# ATTACHMENT B

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 1, 2023, up to and including July 8, 2023:

a. tending to show efforts to create/record non-consensual video and/or audio recordings and images;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to possess or record non-consensual video and/or audio recordings and images;

c. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

d. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All of the above constituting evidence of a violation of 18 U.S.C. Section 1801.